This morning is 01 COMMUNIQUE LAB v. LOGMEIN. Are you ready, Mr. Shum? I am, Your Honor. May it please the Court, the invention in question in this case has three basic components. A personal computer, a remote computer, and a locator server. A locator server has software on it called a location facility, and among other things it creates a communication channel between the personal computer and the remote computer. Now as a matter of claim construction, what Judge Hilton did was to determine that the location facility is, quote, a component of the locator server that itself performs four identified functions. Your Honors, if he had stopped there, we would not have this appeal, because there was substantial evidence below that in fact the group of computers that Logmein operates as their locator server in fact perform all those four functions. Expert testimony exactly to that effect. The error arose, Your Honor, at page nine of the memorandum opinion. When Judge Hilton went further and decided that he would apparently construe the word component in his definition of location facility, a word that doesn't appear in the claims and doesn't appear in the specification, and that he decided that the component meant a singular computer hardware device. What if he had said software? What if he had said it was one software program that could run one or more computers, but that that software program does all four functions? I think we would win under that circumstance as well, Your Honor, because as the experts testified below or gave declarations, a person of ordinary skill in the art understands that computer software is made up of components, different pieces that are put together. The specification explicitly teaches that the facilities, that's their word for software, can be subdivided into different parts, and it expressly teaches that those parts can be spread over several different computers. So what Your Honor is suggesting probably would have been consistent with what the patent says, and it certainly would have been consistent with 0-1 community case theory of liability in this case, because, as I say, there was clear testimony from Dr. Grimshaw that that group of computers together did all four functions that were required of it by the court. Well, maybe you could have one computer program that runs on several different machines, and all four functions are integrated in that program, and I suppose you could also have four programs which are independent of each other and operate independently of each other that could be combined to perform a set of functions, right? Yes. And whether those are the same thing is not something that the district court decided because that's not how it construed the claims. Let me throw in one. Okay, Your Honor. Would the construction be correct if we remove the term itself, and instead put in the phrase, which may comprise one or more computers? So it would be a component of the locator server that performs four functions and may run on several computers? Yes, that's effectively what we were asking for as the correct construction in this case. Now, we did argue in our brief that it's unnecessary to list those four functions, the reason being that those four functions are explicitly set out in the claim as things that the locator server must do. However, if the court wants to include them twice, we can prove that they're there twice. So you need to help us with Dr. Granger and his use of the word itself. Yes. Your Honor, if you look at the quotations taken from Dr. Granger's declaration, he is clearly talking about the locator server itself as opposed to some other component. And when he uses the word component, he's referring to those three components that I mentioned at the beginning of my presentation, that is the remote computer, the personal computer, and the locator server. So when he's saying that, unlike the prior art in the invention of the patent, the locator server itself does all these functions, he's saying that those group of computers and that software functionality that is on... So he's saying the facility itself. Yes, the facility, yes. And the facility is essentially a word that the patent is using to describe a group of software. But what he's differentiating is what runs on the locator server versus what runs on the personal computer and the remote computer. That's what his differentiation was. He never says anything about a requirement that there be just one computer that has everything running on it. In fact, Your Honor, one of the principal arguments that log me in turns to is the Pryton reference. And I believe that intentionally or unintentionally, log me in is misrepresenting the nature of the Pryton reference to the court. When the Pryton reference was discussed by the examiner, the examiner never suggested that the locator facility, the locator server would be two different computers to which Zero One then responded, well, that's not what the patent is claiming. That's what log me in wants the argument to be. Throughout the re-examination procedure, the examiner consistently referred simply to the middle proxy as the locator server, the source of the location facility. So there was never an occasion where Zero One even had the opportunity to disclaim the possibility that the location facility was not distributable over more than one computer. The second argument that is made by log me in in support of their position beyond what Judge Hilton said in his opinion was to refer to Claim 49, a claim that was cancelled prior to the issuance of the re-examination certificate. They make it seem as though Claim 49 specifically claimed several computers on which the location facility would run and that then Zero One cancelled the claim and therefore must be held to have given up that scope of the claim. That is not the case at all. Claim 49 was actually found not to be patentable by the examiner, not because of the several computers, but because of a negative limitation contained elsewhere in that claim talking about what one of the computers would not do. In fact, if you look at Claim 64 that was also submitted in response to the Action Closing Prosecution, that claim specifically talks about the location facility being divided into several parts and spread over several computers. That claim was specifically found to be within the scope of the patent. However, it was dependent on a Claim 63 that was not found to be patentable and therefore the entire matter had to be dropped. Members of the panel, the examiner explicitly held during the re-examination, and I'll quote, the disclosure of the 479 patent has never defined that the locator server computer or server computer comprises a singular component. Actually, he said, the specification of the 479 patent clearly defines that the server computer comprises one or more computers. Now, how can there have been a waiver, an estoppel of the scope of this claim when during the re-examination the examiner himself says, yes, I agree with 01. Well, let me, I see where you're going with this, but isn't the problem really, you did claim, we have a system, or really the way I think about it is you have software that does all four of these functions. And it really, to me, at least tentatively, it doesn't matter what kind of physical machine it's on or not, you're saying we have a, the novel invention that we have is we have software that does all the things that a locator, that this middle proxy does in order to make this thing work. And that's different from the prior art because in the prior art you had various pieces being combined to make that happen, or you had some of the functions being done either by the end user or by the remote server. That's it, you're on. Right, okay, but what I'm trying to get at is if you say you have to have software that does all of the four functions, somebody could defeat infringement by saying, well, you know, actually we have the four functions that are done by separate programs. Right, I mean, that's an argument that isn't teed up at this point. Isn't that really what the argument should be? I'm not sure that Judge Hilton ever got to considering that, but it seems to me the question is where is the software located? So the testimony from the experts about the understanding of a person of ordinary skill in the art was that anyone at the time of this application who understood this art would know that you can chop these pieces of software up into different pieces for various reasons of efficiency and implementation, run them on different machines. The real question is are they all running on the machines that are the locator server machines or is some of that software also running on a personal computer or the remote computer? But then does your patent cover any middle proxy that doesn't use the end user or the remote computer? I mean, is it that broad? Well, we don't use the word middle proxy, Your Honor, but it certainly does cover a locator server that does not use either the personal or the remote computers to do the connecting. That really was, that's what was new about the connection. You could have that middle piece, whatever you want to call it in technical terms, that could be designed a lot of different ways, couldn't it? Yes. And if you get past the issue of whether it has to be on one physical machine, you still have to show that the way yours works reads on the way theirs works. Yes, and we had testimony from the experts, but the case never advanced to that point, Your Honor. Thank you, Your Honor. Thank you, Mr. Shaw. Mr. Stoner? Thank you, Your Honor. May it please the Court. The 479 patent claims never covered the accused subject matter in the first place, and that was confirmed to the patent office during reexamination where any broader coverage was disclaimed to avoid the prior art. Well, now, you have to have a clear and unmistakable disavowal here, or the ordinary meaning of facility, which obviously is going to be more than one computer, is going to prevail. So where is your clear and unmistakable disavowal of claim scope? It was in three ways, Your Honor. First, in the second Ganger Declaration, where the expert witness adopted by the patentee said explicitly that a facility, the location facility here, must itself perform these functions. And what prevents a facility from having more than one computer? He went on to say, and not some other component. Still, the question is, where does that clearly disavow, even if one expert can disavow, which may be another question, but where does that clearly disavow more than one computer? It disavows, Your Honor, because it makes the distinction over the prior art meaningless. This was applied to the Crichton reference, too, where the patent office said there is this middle proxy in Crichton that anticipates your location facility. Zero One distinguished that by saying the middle proxy connects the communication, creates a communication channel, but the end proxy locates the personal computer when needed. So it said that two different computers, software running on two different computers, different software performing the different functions was different from the patent claims. That was deemed sufficient to overcome the patent office's rejection. There is a third aspect to the disclaimer as well. In the re-examination, the patentee reversed course here. During the initial part of the re-examination, the patentee said distributed computing is common, we want to cover that. But the patent office rejected those claims again, and the patentee then reversed course. It has to be clear and unmistakable and this Claim 49 was rejected for other reasons. There was a lot of murkiness about the reason for the rejection as well as for their acquiescence in the rejection. Your Honor, I would respectfully disagree. Did they at any point say we are disavowing Claim 49 because our invention is clearly only one computer? They never said that, Your Honor. That would be clear and unmistakable. Everything else is kind of murky, isn't it? No, Your Honor, respectfully. It was clear and unmistakable in the Ganger Declaration that he set up, first of all, to say what the claims cover. Not merely to disclaim, but to confirm the coverage of the claims by saying one of skill in the art would not read this term location facility to cover a device where the location facility performs some of the functions and some other component performs the other functions. That doesn't answer the question, though, because the component could be everything in the middle. That could be the location facility and it could run on several different pieces of hardware and still not violate that, couldn't it? That makes the distinction over the prior art meaningless. If the component can be anything, then there could be no other component. No, but I thought in what you just said, if I understood your description correctly, you had part of the function being performed, and I'm going to put this in very crude terms, part of the function being performed in the middle and part of it being performed at one of the ends. And they're saying what's innovative about this is that nothing is done at the end. It's all done in the middle. No, Your Honor, that is the key distinction here that shows the distinction they're making is not correct. The ends are the personal computer and the remote computer. In Crichton, there was an end proxy, which is a separate computer from the personal computer. But in terms of the three circles, if you will, the end proxy is at the end, right? It's separate from the personal computer, Your Honor, and that was the statement made during prosecution. But it's not in the middle. It's not the locator service. It is in the middle. It is what locates the personal computer, according to 0-1's representation to the patent office, and that the middle proxy, in the middle, another component in the middle. They had two components in the middle. The middle component, the middle proxy, created the communication channel. Where in the record did they make that statement that it all happens in the middle? This was made in a couple places. One, in Dr. Ganger's declaration, which is at 18-001, and at 18-006, Dr. Ganger says, the action closing prosecution correctly notes that the executing the server end proxy on a separate computer from the personal computer. So it's not the end. It's not the personal computer. He then goes on down to paragraph 17 to say the middle proxy's only role is to join pairs of end proxies and act like a transparent pipe between them, effectively establishing a connection between them. So that's establishing a communication channel. He then goes on to say the server end proxy determines the location of the appropriate personal computer when it needs to deliver communications to it. So in this case, there are three relevant components. There's the personal computer, and then there are two components in the middle, which are the middle proxy and the end proxy. And they said because the middle proxy, the way the patent office initially said, does not perform all the functions of the location facility, because the end proxy, some other component does, they were different. The proxies could have been software, though. They don't have to be physical machines. If it's different software. And that is undisputably the log-mean system. It is different software on different machines. It's different software in different languages, on different machines, with different addresses. That's what I was getting at when I was talking with counsel, but the point is that's not what the claim construction says. The claim construction does say that, Your Honor. It says computer, doesn't it? It doesn't say anything about software. Where Judge Hilton said, A2008, the proper construction of the term location facility is a component of a locator-server computer. It's a component of a computer. It's software. But it's a computer. It's not a computer. Yeah, and your argument, your brief, I think, hit on the point, it has to be a single computer. There was a physicality to your argument. You weren't talking about software that does different things. It is a single component of a computer. In this case, it would be software. Of a single computer? It wouldn't necessarily need to be on a single computer. Okay, let me ask you this. I'm sorry. Claim 1, you say on page 31, Claim 1 demonstrates that claimed location facility must be a single component of a single locator-server computer, in short, because of, quote, its, close quote, and, quote, the, close quote, are singular terms, the claimed location facility must be a software component that is included with it in a single locator-server computer. That's a quote from your brief. Does Claim 1 actually say it must be a single component of a single computer, or does it just imply it through the use of these singular terms? Could multiple computers work through the same IP address? People in the industry refer to bots. What's a bot? If you're going to talk about the grammar of computing as opposed to computer language, then a bot is multiple things, isn't it? Your Honor, the claim language is singular in its construction. And claim language in singular means what to a patent lawyer? It means that, in this case, it is a component of... What is the general rule? One rule is A means one or more. Yeah, that is the rule.  So you're caught in a clear and unmistakable disavowal of that rule. So you're caught in a double clear and unmistakable disavowal problem. Well, in this case, Your Honor, the term, the use of singular referrals back to the antecedent of its provide that. But even if it was not the case, it does not matter. If you had a location facility, that could mean you could have more than one location facility, but that's one... More than one location facility performing all of the functions required in the claim by that facility. It isn't subdividing up the facility so that one facility performs some functions and another performs different functions. That is, in this case, the claim language itself requires a singular component. That was disclaimed. It requires that the location facility, wherever that is, perform four functions. And in prosecution and reexamination, they gave meat to that language by saying... Where does the claim language say singular? It says a location facility... Which means one or more, period. That is the rule. A means one or more. So read that. In one or more location facilities... Now continue. In one or more location facilities... How does the claim language say it's singular? It says that each one of those location facilities performs four functions. There may be more than one, but each one performs four functions. And that was what was confirmed to the patent office during reexamination. And to distinguish the prior art. And Claim 49, too, attempted to get a location facility that was divided, and the patent office said that was not supported by the specification, including the language and the specification that is generally talking about dividing up facilities. It is true that the patentee here wanted, after the fact, to try to claim distributed computing. It is the way computers, a lot of computer systems work, including the prior art. But they were forced to reverse course by the fact that the patent office continued to reject the claims when they were construed so broadly, and said our system is different. Our system has a location facility that itself performs these functions, does not merely assist some other component, does not enable some other component, does not facilitate some other component to perform those functions. They applied that disclaimer to, which I submit is clear and unmistakable, and the patent office viewed it as such in overcoming and changing the rejections. They applied that to distinguishing the particular prior art, the Crichton reference, which shows the other component was not merely the personal computers. It was any other component, including components in the middle between the personal computers. And they also cancelled the claim, did not pursue a claim, but attempted to claim that specifically, and they said that's what they were doing. Applying that claim construction, there is no dispute of fact that LogMeIn does not infringe, because it has the software. It's different software. It's on different computers too, but it is different software in different languages with different addresses performing different functions. You said that issue was not ever joined. The district court did not join that issue as to whether the software was the same or similar. Oh, he did. He did. It was in the record. It's in the record. Did he analyze the code and everything, or did he just say, well, it has to be on one computer, and it's not, so we're done? I don't believe he said that. We presented, and it's in the record, the facts concerning the software, which is on different computers in different geographic locations with different addresses... So the district court compared... Assuming that the proper construction is that the location facility can be on more than one computer, the district court compared the components and said these aren't the same? He said, as a matter of undisputed fact, they were not the same, because the different software that performs different functions is on different computers in different geographic locations. I'm sorry. What he said was it has to all be in one place. He says itself has to do it. And let's say that's wrong. Let's say that it can be spread out over more than one location, as long as it's a single component. Has there been a comparison, either under the doctrine of equivalence or just for a virtual or actual similarity between their software and your software? Between the patent? Yes, there has been that comparison. And even if it could be on more than one computer, it doesn't infringe that? The district court made that factual determination? Yes, the district court did. And including under the doctrine of equivalence, which was never properly articulated, he'd address that at the end of his opinion. Unless your honors have further questions. Thank you, Mr. Stoner. Two points briefly, Your Honor. First of all, responding to the last question from Judge Bogle. The district court never gave any consideration to the question of if the software for the location facility is spread over several computers, is there infringement here or not? The district court thought that the entire matter was resolved by simply determining that there can only be one hardware device as the locator serves. I'd ask you where it didn't be, but I don't see it. Secondly, I would like to respond to Mr. Stoner's characterization of the Crichton reference. It might be helpful if your honors had it available to turn to page 12 of the red brief, because that's where the figure from Crichton is there, and it's easier to talk about it in the context of the figure. The server end proxy was never, ever considered by the examiner to be part of what I think Judge Bogle referred to as the middle, that is the locator server in the location facility. In fact, in paragraph 16 of Dr. Ganger's declaration, cited by Mr. Stoner, Dr. Ganger said because the Crichton reference teaches away from the use of dynamic IP addresses for the server end proxy, now that's item 213, then he says perens, i.e. the alleged data communication facility identified by both Citrix and the ACP, the Action Closing Prosecution. Clearly, the examiner and Citrix were arguing that the server end proxy was analogizable to the data communication facility. If you look at the patent, the data communication facility is hanging off of the personal computer, not part of the locator server, not part of the location facility. What was going on here in Dr. Ganger's analysis was saying if you put the data communication facility as a separate hardware computer from the X server, you nevertheless do not meet the limitations of the claim. He never said that you couldn't split the location facility among several different computers. He never suggested that the server end proxy was doing the finding aspect of the location facility that the claim requires. That server end proxy was never part of the middle box, so to speak. And then finally, Your Honor, in terms of the understanding that the examiner had during the re-examination, both from the analysis of Crichton and from the new claims that were presented to the examiner, remember that the examiner expressly found that there was support in the specification for the claim language that was attempted to be added describing several computers, several hardware computers, doing the work of the location facility and the locator server. He said that that was clearly what was meant by the patent. In light of that, there cannot be a clear and unmistakable waiver of what the examiner himself understood that 01 Communiqué's argument was on re-examination. Thank you very much. Thank you, Mr. Cruchot.